## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00280-WYD-CBS

THE HEALTHCARE FINANCIAL GROUP, INC.

     Plaintiff,

v.

THE HARTFORD CASUALTY INSURANCE COMPANY,

     Defendant.

---

## MEMORANDUM ORDER

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendant, The Hartford Casualty Insurance Company's ("The Hartford") Motion to Compel (Document # 56), filed on September 6, 2005. In its motion, The Hartford seeks an order requiring production of most documents identified in Plaintiff, The Healthcare Financial Group, Inc.'s privilege log. Plaintiff, The Healthcare Financial Group, Inc. ("THCFG") filed its Opposition to Defendant's Motion to Compel on September 16, 2005. By Order of Reference, dated February 25, 2004, this case was referred to the Magistrate Judge to, *inter alia*, "hear and determine pretrial matters, including discovery and other non-dispositive motions."

On October 11, 2005, this court heard oral arguments both for and against Defendant's motion to compel. At that hearing, I reviewed many of the facts relevant to the court's analysis and alluded to several reported decisions which my own research had identified. At the

1

conclusion of oral argument, counsel for the parties requested leave to submit additional briefs. Pursuant to the court's direction, on October 31, 2005, The Hartford filed a Supplemental Brief in support of its motion.  Plaintiff filed its Supplemental Brief in Opposition on November 11, 2005. The court has carefully considered the arguments presented in the parties' papers and during the October 11th hearing, the entire court file, and the applicable case law.  For the following reasons, Defendant's motion to compel is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff THCFG's Complaint, filed on February 13, 2004, alleges three claims for relief: (1) breach of contract, (2) bad faith breach of contract, and (3) violation of the Colorado Consumer Protection Act, Colo.Rev.Stat. §§ 6-1-101, *et seq.*  The instant action arises out of an earlier lawsuit, *The Healthcare Financial Group, Inc. v. Monica Pappas DeVitt, et al.,* Case No. 02-CV-391, District Court, Arapahoe County, State of Colorado (hereinafter "the Underlying Action"), filed in April 2002.  The Complaint specifically alleges that The Hartford breached its insurance policy by failing and refusing to pay THCFG's defense costs related to the Underlying Action.  *See* Complaint at ¶¶ 14 and 17.  Plaintiff further contends that The Hartford breached the insurance policy's implied covenant of good faith and fair dealing by failing to pay THCFG's defense costs in a timely manner without reasonable justification or excuse.  *Id.* at ¶¶ 21-22. Finally, the Complaint alleges that The Hartford engaged in an unfair and deceptive trade practice in violation of the Colorado Consumer Protection Act, by failing to pay Plaintiff's defense costs in a timely manner without justification, and that such practice significantly impacts those members of the public with whom The Hartford does business.  *Id.* at ¶¶ 26-27.

On April 2, 2004, Defendant filed its Answer in this action and specifically denied the

2

allegations in paragraphs 17, 21, 22, 26 and 27 of the Complaint.  On July 23, 2004, the court

granted The Hartford's motion for leave to file a counterclaim seeking a declaration that it had no

duty to defend or indemnify THCFG in connection with the Underlying Action and further relief

in the form of reimbursement of monies advanced to in the context of the Underlying Action.

To place the pending motion in the proper context, it is necessary to review the salient

facts and chronological history of the Underlying Action.  The following facts are taken from the

submissions of the parties and the court file, judicial notice of which is taken.

In February 2002, THCFG filed an action in the District Court for Arapahoe County,

Colorado, captioned as *The Healthcare Financial Group, Inc. v. Monica Pappas DeVitt, et al.*,

Case No. 02-CV-0391.  In that case, THCFG alleged that two former employees, Monica Pappas

and Bill DeVitt, had engaged in an illegal scheme to defraud Plaintiff by engaging in mail fraud,

wire fraud and other crimes.  In addition to other forms of relief, Plaintiff sought to recover

money damages and avoid any potential obligations the company might have to Pappas and

DeVitt under their employment contracts.  On or about July 15, 2002, THCFG was served with

an Answer and First Amended Counterclaims filed by Pappas and DeVitt.  The First Amended

Counterclaims generally alleged that Lawrence Hynek, THCFG's Chairman, had devised a plan to

defraud which entailed hiring Pappas and Devitt, exploiting their reputations to attract significant

clients and revenue for THCFG, and then terminating their employment contracts and damaging

their reputations so they could not effectively compete in the health information management

field.  *See* Exhibit A-2, attached to Defendant's Motion for Summary Judgment.  During this

same period, THCFG had a Business Liability insurance policy (with a liability limit of $2,000,000

per occurrence)and an Employment Practices Liability Coverage form (with a coverage limit of

$5,000) issued by The Hartford.

The Hartford received a copy of the First Amended Counterclaims on or about September 16, 2002, along with a request for a defense and indemnification under the terms of the insurance policies with THCFG. In a letter dated October 17, 2002, The Hartford unequivocally concluded that "there is no duty to defend or indemnify THCFG, Mr. Hynek or Mr Jones under the Business Liability Coverage form." *See* Exhibit A-4, at p. 5, attached to Defendant's Motion for Summary Judgment. As to the Employment Practices Liability Coverage form, The Hartford indicated it was "accepting the defense of this complaint under a reservation of all rights and defense available under the policy and the law." *Id.* at p. 9. While accepting this limited defense, The Hartford specifically noted that

> The limit of coverage under the Employment Practices Liability Coverage form is $5,000. Payment of claims expenses, including attorney costs and fees erode the limit. Hartford Casualty is extending the coverage to the limits provided ($5,000) in the policy for the defense of the counter claim. Once Hartford Casualty has paid its limits, it will withdraw from the defense of the complaint.

*Id.*

On January 31, 2003, THCFG was served with Pappas and DeVitt's Second Amended Counterclaims, which asserted new factual allegations in the nature of libel, slander and malicious prosecution. A copy of the Second Amended Counterclaims was forwarded to The Hartford on April 10, 2003, along with a renewed request for coverage. *See* Exhibit A-6, attached to Defendant's Motion for Summary Judgment. On June 3, 2003, The Hartford responded with a eight-page letter which addressed the issue of coverage under the Business Liability policy in light of the allegations in the Second Amended Counterclaims. In this letter, The Hartford concluded that "there are isolated allegations contained within the Second Amended Counterclaim that,

4

when read broadly, might allege some elements of defamation that conceivably trigger a duty to defend under the policy." *See* Exhibit A-7, at p. 7, attached to The Hartford's Motion for Summary Judgment. On that basis, The Hartford accepted the defense of the claims in the Second Amended Counterclaim "under a reservation of all rights and defenses under the above-referenced policy and applicable law." At the same time, The Hartford reaffirmed

> its initial coverage decision outlined in its letter of October 17, 2002. A review of the allegations contained in the First Amended Complaint does not reveal any allegations that trigger a duty to defend or indemnify under the above-referenced policy. Accordingly, The Hartford's position on what portion of those defense costs it will reimburse the insured remains as stated in its June 2, 2003 correspondence, subject to a review of those billings, recently received, that have occurred after April 19, 2003.

*Id.*

At a mediation on April 22, 2003, THCFG settled the Underlying Litigation with Pappas and DeVitt. Pursuant to a Nonwaiver Agreement executed on October 31, 2003, The Hartford agreed to advance $250,000 toward that settlement. These funds were advanced subject to a full reservation of rights as set forth in the Nonwaiver Agreement, including The Hartford's right to argue there was not coverage under the relevant policies. *See* Exhibit A-8 to Defendant's Motion for Summary Judgment. Plaintiff brought this case to recover defense costs and damages from The Hartford.[1]

In the course of discovery in the instant action, Plaintiff produced a 51-page privilege log identifying documents withheld on the basis of the attorney-client privilege or the work product

---

[1] Plaintiff's Complaint also asserted claims against Clarendon National Insurance Company. The claims against Defendant Clarendon were dismissed with prejudice on January 26, 2005, pursuant to a Stipulation of Voluntary Dismissal.

doctrine.[2]  According to Plaintiff, privileged documents were withheld either because they related to the insurance issues pertinent to this litigation, or because they related to the underlying litigation.

## ANALYSIS

By excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26 attempts to strike a balance between conflicting interests.  Privileges further the administration of justice and "should not be set aside lightly."  *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002); *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991).  However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed.  *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995).  *See also Wesp v. Everson*, 33 P.3d. 191, 196-197 (Colo. 2001).  The party withholding information on the basis of privilege must make a clear showing that the asserted privilege applies and must establish all elements of the privilege.  *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994).  *See also* Fed.R.Civ.P. 26(b)(5) (the party claiming privilege must present sufficient information to permit the opposing party to assess the applicability of the privilege).  While a trial court's determinations regarding a waiver of the attorney-client privilege

---

[2]The court is not at all certain how many different documents actually have been withheld. A cursory review of Plaintiff's privilege log suggests that the same document may have been bates-stamped more than once and may be the subject of multiple log entries.  For example, document THCFG010336 is listed on page 19 of the privilege log and described as a April 2, 2003 e-mail concerning "Mark Baird, employment lawyer."  It appears that the same e-mail is listed as document THCFG010906 on page 34 of the privilege log.  Document THCFGO10262-63 is listed on page 18 of the privilege log and described as a June 20, 2003 e-mail string "regarding trial settings."  The same e-mail string seems to be listed as document THCFGO10714-15 on page 30 of the privilege log.

may be reversed for an abuse of discretion, the appellate court will review the trial court's

underlying factual determinations for clear error and review *de novo* purely legal questions.

*Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).

      The attorney-client privilege protects from discovery communications between a client and

an attorney, made in order to obtain or deliver legal assistance, that the participants intended to

treat as confidential.[3]   *See Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998).

*See also People v. Madera*, 112 P.3d 688, 690 (Colo. 2005).

> "The [attorney-client] privilege recognizes that sound legal advice or advocacy
> serves public ends and that such advice or advocacy depends upon the lawyer
> being fully informed by the client . . . 'The lawyer-client privilege rests on the need
> for the advocate and counselor to know all that relates to the client's reasons for
> seeking representation if the professional mission is to be carried out.'"

*Horton v. United States*, 204 F.R.D. at 672 (quoting *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th

Cir. 1994).  The Hartford does not seem to dispute that the documents in question involve

confidential communications between counsel and client that ordinarily would fall within the

attorney-client privilege.

      Defendant raises three arguments in support of its motion to compel.  First, The Hartford

argues that documents from the Underlying Action that provide factual information relating to the

issues in that case are discoverable given Plaintiff's and Defendant's common legal interest "in the

pertinent facts necessary to defend the underlying lawsuit."  *See* Defendant's Motion to Compel,

at 4.  This argument relies heavily on the decision in *Metro Wastewater Reclamation District v.

Continental Casualty Co.*, 142 F.R.D. 471, 476 (D. Colo. 1992).  In that case, the court cited the

---

[3]In this case, which invokes the court's diversity jurisdiction, Colorado law provides the
rule of decision on privilege issues.  *See* Fed. R.Evid. 501.

"common interest" doctrine, which holds that communications shared with third persons who have a common legal interest with respect to the subject matter of the litigation do not breach the confidentiality requirement underlying the attorney-client privilege. The court in *Metro Wastewater* cited several cases that had applied the "common interest" doctrine to prevent an insured from asserting the privilege where documents generated during an underlying litigation were sought by the insurer in a subsequent coverage dispute. The court specifically found that "[t]here has been no showing by Metro that, at the time the documents in question were generated, it had any intent or expectation that they would be concealed from its insurance carriers." *Id.* at 476.

Other decisions have taken a narrower view of the "common interest" doctrine. As the court noted in *Roberts Aircraft Co. v. Kern*, 1997 WL 524894, *3 (D. Colo. 1997), "the common interest doctrine presupposes that both the insured and the insurer were, at one time, represented by the same legal counsel." *See also Frontier Refining, Inc. v. Gorman-Rupp Company, Inc.*, 136 F.3d at 705 (noting that a "growing majority of courts appear to reject the applicability of the [common interest] doctrine unless the current adversaries were actually represented by the same attorney in the prior litigation"); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. at 625 (refusing to apply the common interest doctrine where the parties to the litigation did not share the same counsel). Admittedly, the common interest doctrine has been applied in cases where the parties were represented by separate counsel. However, in those cases the parties had joined in a legal defense or enterprise. *See, e.g., Go Medical Industries PTY, Ltd. v. C.R. Bard, Inc.*, 1998 WL 1632525, *3 (D. Conn. 1998) (noting that parties invoking the common interest doctrine "must show that they had a common legal, as opposed to commercial, interest and that they cooperated

8

in formulating a common legal strategy"), *judgment rev'd in part and vacated part*, 250 F.3d 763

(Fed. Cir. 2000).

This court has not found, and the parties have not cited, any Colorado court decisions

that apply the common interest doctrine under analogous facts.  However, the Colorado Court of

Appeals has observed that when applying the "common interest" doctrine or privilege,

> the court must focus on the circumstances surrounding the disclosure of the
> communications or documents rather than on when the communications or
> documents were generated.  The privilege applies only to communications given in
> confidence and intended and reasonably believed to be part of an *on-going and
> joint effort to set up a common legal strategy.*

*Black v. Southwestern Water Conservation Dist.*, 74 P.3d 465, 469 (Colo. App. 2003) (emphasis

supplied).  *Cf. Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572 (E.D.

Cal. 2002) (holding that the common interest or common defense doctrine only protects

communications when they are part of an ongoing and joint effort to set up a common defense

strategy); *McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1246630, *2 (N.D.

Ill. 2001) ("[t]o constitute a 'common interest' it is not enough that the parties have some

interests that overlap; the parties must have a strong identity of interests").

Notwithstanding the decision in *Metro Wastewater,* I find that the particular facts of this

case do not support an application of the common interest doctrine.  It is undisputed that Plaintiff

was represented in the Underlying Action by counsel of its choice, and not by counsel selected or

retained by The Hartford.  *Cf. Remington Arms Co. v. Liberty Mutual Insurance Co.*, 142 F.R.D.

408, 418 (D. Del. 1992) (concluding that "the rationale which supports the 'common interest'

exception to the attorney-client privilege simply doesn't apply if the attorney never represented

the party seeking the allegedly privileged materials").  *Compare Guideone Specialty Mutual*

*Insurance Co. v. Congregation Bais Yisroel*, 381 F. Supp.2d 267, 280 (S.D.N.Y. 2005)(recognizing that the common interest doctrine has been applied to communications between an insured and counsel supplied by the insurer).  The Hartford was given notice of the First Amended Counterclaims on or about September 16, 2002.  On October 17, 2002, The Hartford unequivocally determined that it had no duty to defend or indemnify THCFG under the Business Liability Coverage form.  *See Bovis Lend Lease LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, *15 (S.D.N.Y. 2002) (concluding that the common interest doctrine cannot be invoked by an insurer where the insurer disclaims coverage and fails to provide a defense to its insured); *670 Apartment Corp. v. Agricultural Insurance Co.*, 1997 WL 801458, fn. 2 (S.D.N.Y. 1997) (noting that the common interest doctrine is inapplicable where an insurer declines to provide a defense and take a position antagonistic to the insured); *Pittson Co. v. Allianz Insurance Co.*, 143 F.R.D. 66, 70-71 (D. N.J. 1992) (holding that the common interest doctrine does not compel disclosure ofr privileged information where the insurer refused to take part in litigation despite notice and an opportunity to participate).  *See also Hartford Fire Insurance Co. v. Guide Corp.*, 2005 WL 675406, *6 (S.D. Ind. 2005) (noting that the insured's denial of coverage defense and subsequent reservation of rights created a conflict of interest that justified the insured in retaining independent counsel and withholding privileged materials from its insurers); *Northwood Nursing & Convalescent Home, Inc. v. Continental Insurance Co.*, 161 F.R.D. 293, 297 (E.D. Pa. 1995) (finding that the insurer had not demonstrated a common identity of interest with the insured where the insurer denied coverage; reasoned that the insured proceeded with the reasonable expectation of a privilege between it and its chosen counsel).

In deciding the pending motion to compel, the court remains mindful of the practical

realities of the relationship between The Hartford and THCFG in 2002 and 2003.

> It is true that documents may "*normally* not [be] privileged," but where there is an adversarial relationship between an insured and insurer as to whether coverage exists, the parties have never shared the same counsel or litigation strategy and the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties, a common interest, at this time, does not exist beyond the formal designations of insured and insurer.

*Vermont Gas Systems, Inc. v. United States Fidelity & Guaranty Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993) (declining to invoke the common interest doctrine to overcome the protection afforded by the attorney-client privilege) (emphasis in original).  Certainly, nothing in the record suggests that THCFG and The Hartford coordinated litigation strategy prior to June 3, 2003.  *Cf. North River Insurance Co. v. Columbia Casualty Co.*, 1995 WL 5792, *4 (S.D.N.Y. 1995) (in deciding whether or not to apply the common interest doctrine, "[w]hat is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal").  Under the circumstances, The Hartford cannot belatedly invoke the common interest doctrine to undo the potentially adversarial relationship it created with its October 17, 2002 decision to deny coverage and indemnification.  *Cf. Bovis Lend Lease LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693, *15 (S.D.N.Y. 2002).

I recognize that the October 17, 2002 letter stated that The Hartford would accept the defense of the First Amended Counterclaims under a reservation of rights and defenses, pursuant to the Employment Practices Liability Coverage form.  Under the circumstances, this narrow intersection of interests is not sufficient to invoke the common interest doctrine.  As The Hartford took pains to point out in its October 17th letter,

> The limit of coverage under the Employment Practices Liability Coverage form is $5,000.  Payment of claims expenses, include attorney costs and fees erode the

11

> limit.  Hartford Casualty is extending the coverage to the limits provided ($5,000)
> in the policy for the defense of the counter claim.  Once Hartford Casualty has paid
> its limits, it will withdrawn from the defense of the complaint.

*See* Exhibit C attached to Supplemental Brief in Support of Defendant's Motion to Compel.

Defendant readily concedes that its claims specialist "expected that submission of bills would immediately exhaust the $5,000 of coverage and complete Hartford Casualty's obligation under the EPLI coverage form."  *See* Supplemental Brief in Support of Defendant's Motion to Compel, at 5.  Given the hotly contested and protracted history of the underlying litigation, I find, as a practical matter, that The Hartford's *de minimis* participation under a reservation of rights did not establish "a common interest . . . beyond the formal designations of insured and insurer."  More importantly, I find nothing in The Hartford's October 17, 2002 letter that would imply an intent to establish "an on-going and joint effort to set up a common legal strategy."

In the alternative, Defendant contends that Plaintiff has waived the attorney-client privilege by putting the Underlying Action and the related privileged documents squarely at issue. *See* Defendant's Motion to Compel, at 6.  Admittedly, in *Mountain States Tel. & Tel. Co. v. Di Fede*, 780 P.2d 533 (Colo. 1989), the Colorado Supreme Court acknowledged that a party may have impliedly waived the attorney-client privilege when he places a claim or defense at issue, and the privileged document or information in question has a direct bearing on that claim or defense. Notably, The Hartford cites no decisions by Colorado courts that have held an insured waives the attorney-client privilege merely by asserting a claim for defense costs or indemnification.  Indeed, the Colorado Supreme Court has more recently recognized that *Mountain States* does not endorse a blanket waiver of the attorney-client privilege.  Rather, the Colorado Supreme Court adopted a three-prong test for an implied waiver of the attorney-client privilege, which asks

12

whether:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*People v. Madera*, 112 P.3d at 691-92. Clearly, a party does not waive the attorney-client privilege or put privileged information "at issue" simply by initiating litigation. Moreover, the party asserting waiver of the privilege has the burden of persuasion. *People v. Medina*, 72 P.3d 405, 408 (Colo. App. 2003), *cert. denied*, 2003 WL 21488726 (Colo. 2003).

Citing Plaintiff's allegations of a duty to defend and indemnify in the Underlying Action, The Hartford has moved to compel production of "all documents identified in [Plaintiff's] privilege log that are from the underlying litigation with the exception of documents that are between Plaintiff and its attorneys regarding the viability of insurance coverage or the present litigation." *See* Defendant's Motion to Compel, at 8. Defendant insists that "questions of insurance coverage and defense costs related to the underlying litigation rest completely upon an analysis of the underlying litigation documents and factual information exchanged between insured and its attorneys regarding the issues in that case." *See* Defendant's Motion to Compel, at 6. The Hartford also insists that the subject documents "may evidence the reasonableness of costs incurred and how expenditures should be allocated." *Id.*

In declining to find a sweeping waiver of the attorney-client privilege, I am persuaded by the reasoning in *Remington Arms Co. v. Liberty Mutual Insurance Co.*, 142 F.R.D. 408 (D. Del. 1992). As that court noted, the implied waiver doctrine "should focus on how a party plans to prove the elements of its case" and whether the privileged information is actually required for a

truthful resolution of the issues. *Id.* at 414-15. The party asserting an implied waiver should be required to show actual need, instead of merely arguing that the disputed information is relevant. *Cf. Microsoft Corp. v. Federal Insurance Co.*, 2003 WL 548758, *3 (S.D.N.Y. 2003) (in a case where plaintiff sought indemnification and defense costs from its insurance carrier, refused to apply the "at issue" doctrine so broadly as to vitiate the attorney-client privilege with respect to all aspects of a client's legal defense; only allowed discovery of the law firm's underlying time sheets, time records, as well as documents, policies and procedures relating to the manner in which fees charged to the insured in the underlying action were calculated). Plaintiff states that it has provided The Hartford with access to over 120 boxes of documents from the underlying litigation and that Defendant has copied more than 5,000 pages from those boxes. *See* Plaintiff's Opposition, at 2. *Cf. Ryall v. Appleton Electric Co.*, 153 F.R.D. 660, 662-63 (D. Colo. 1994) (while citing the *Remington Arms* decision with favor, declined to apply the implied waiver doctrine after noting that the party invoking the doctrine already possessed a significant amount of information and was not hamstrung in preparing her case at trial). From an initial review of Plaintiff's list of trial exhibits, it does not appear that Plaintiff intends to offer any of the withheld documents at trial. *Cf. Pittston Co. v. Allianz Insurance Co.*, 143 F.R.D. at 71 (holding that the "at issue" doctrine was not applicable where plaintiff had not sought to use or inject any privileged documents as part of its claim).

My decision is further supported by a review of Plaintiff's privilege log. Although Defendant's motion argues in favor of an expansive waiver, I am at a loss to understand how many of the disputed documents would be "vital" to The Hartford's defense in this case or satisfy the third prong of the *Mountain States* test for an implied waiver. For example, the privilege log

14

contains several references to communications relating to "trial date" (*e.g.*, THCFG010027,

THCFG010029, THCFG010308, THCFG010311), "revised language for interrogatory" (e.g.,

THCFGO10475, THCFGO10484, THCFGO11104, THCFGO11107, THCFGO11123),

"scheduling of phone conference" (*e.g.*, THCFG010495, THCFG010498), "drafts of proposed

orders" (*e.g.,* THCFG010560, THCFG010567), "transfer of The HealthCare Financial Group,

Inc. funds from the bank to the Court registry" (THCFG010653), or the "deadline to designate

Larry Hynek deposition" (THCFG010457).  Plaintiff's privilege log also includes several

HealthCare Financial Group, Inc. balance sheets for designated months (THCFG010118-

THCFG010147).  Given that many of the disputed documents have only a tangential relevance at

best, I further disinclined to find that The Hartford has sustained its burden of proof.  *See In re M*

*& L Business Machine Co., Inc.*, 167 B.R. 937, 943 (D. Colo. 1994) (holding that where the

attorney-client privilege presumptively applies, the burden of proof is on the party attacking the

assertion of the privilege).  The attorney-client privilege does not protect "facts" and nothing in

this Memorandum Order is intended to limit Defendant's rights in that regard.  *See Alliance*

*Construction Solutions, Inc. v. Department of Corrections*, 54 P.3d 861, 865 (Colo. 2002) ("it is

important to know that the privilege only protects against disclosure of communications and does

not protect the underlying facts on which the communication is based").  The court simply finds

that The Hartford has not made the requisite showing to overcome Plaintiff's assertion of

privilege.

Finally, The Hartford argues that Plaintiff had no legitimate expectation of privacy with

respect to documents relating to the Underlying Action, based upon Plaintiff's duty under the

applicable policy to "cooperate . . . in the investigation, settlement of [a] claim or defense against

[a] suit." *See* Supplemental Brief in Support of Defendant's Motion to Compel, at 12.  Defendant

reasons that a cooperation clause is designed to preclude an insured from taking any action that

would have a substantial, adverse effect on the insurer's defense, settlement or handling of the

claim.  *See* Defendant's Supplemental Brief, at 12 (citing *State Farm v. Secrist*, 33 P.3d 1272,

1275 (Colo. App. 2001)).  I note that Defendant did not address the cooperation clause in its

original motion.  The issue was only raised in a Supplemental Brief that did not cite any Colorado

decisions specifically on point.

Defendant's argument seems to pervert the intent of a cooperation clause.  As Plaintiff

correctly notes, The Hartford is not seeking the disputed documents "in its defense" of the claims

in the Underlying Action, but rather as a means to defeat claims for indemnification and costs of

defense by the insured.  If Defendant is correct, and "cooperation requires 'joint operation;

common effort or labor," then I am at loss to understand why "cooperation" requires the insured

to waive its attorney-client privilege while The Hartford simultaneously denies any duty to defend

or indemnify.  *See* Defendant's Supplemental Brief, at 12.  I conclude that Plaintiff cites the more

persuasive line of cases.  *See* Plaintiff's Supplemental Brief and the cases cited therein, at 7-8.


Accordingly, for the foregoing reasons, The Hartford Casualty Insurance Company's

Motion to Compel (Document # 56), dated September 6, 2005, is denied in part and granted in

part.  I will require Plaintiff to produce the law firm of Sherman & Howard's time sheets and time

records relating to the underlying litigation, as well as any documents, policies and procedures

relating to the manner in which fees charged by Sherman & Howard in the underlying action were

calculated, if those documents are included in the privilege log or have not already been disclosed.

16

In other all respects, Defendant's motion is denied.

DATED this 16 day of December, 2005.

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge